IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HAROLD LEE KROMELBEIN, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Case No.: |
| ) | |
| ENVISION PAYMENT SOLUTIONS, INC., ) | COMPLAINT AND DEMAND FOR |
| ) | JURY TRIAL |
| Defendant ) | |
| ) | (Unlawful Debt Collection Practices) |

## COMPLAINT

HAROLD LEE KROMELBEIN ("Plaintiff"), by his attorneys, KIMMEL & SILVERMAN, P.C., alleges the following against ENVISION PAYMENT SOLUTIONS, INC. ("Defendant"):

## INTRODUCTION

1. Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

## JURISDICTION AND VENUE

2. Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy," and 28 U.S.C. § 1331 grants this court original jurisdiction of all civil actions arising under the laws of the United States.

3. Defendant conducts business and has an office in the Commonwealth of Pennsylvania and therefore, personal jurisdiction is established.

1

PLAINTIFF'S COMPLAINT

4. Venue is proper pursuant to 28 U.S.C. §§1391(b)(1) and (b)(2).

5. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

6. Plaintiff is a natural person residing in Athens, Pennsylvania, 18810.

7. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

8. Defendant is a national debt collection company with its corporate headquarters located at 3039 Premiere Parkway, Suite 600, Duluth, Georgia, 30097.

9. Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and repeatedly contacted Plaintiff in an attempt to collect a debt.

10. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## PRELIMINARY STATEMENT

11. The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute, which prohibits a catalog of activities in connection with the collection of debts by third parties. See 15 U.S.C. § 1692 et seq. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

12. In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

13. In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692a. Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. 15 U.S.C. § 1692b.

14. Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e.

## FACTUAL ALLEGATIONS

15. At all relevant times, Defendant was attempting to collect an alleged consumer debt from Plaintiff.

16. The alleged debt at issue arose out of transactions, which were primarily for personal, family, or household purposes.

17. Beginning in or around April 2011 and continuing though June 2011, Defendant, its agents, employees, and servants, engaged in debt collection activities seeking payment from Plaintiff.

18. Defendant and its employees identified as "Kristy" and "Abraham Martin," harassed Plaintiff in an attempt to collect the alleged debt.

19. Defendant, its employees and servants harassed Plaintiff by making continuous calls to his home telephone number.

20. Defendant intentionally wanted to harm Plaintiff and cause injury, stress, fear and humiliation, believing that to do so would substantially increase the likelihood of the debt being paid by Plaintiff.

21. Plaintiff received phone calls from Defendant on a number of occasions including but not limited to: April 20, 2011, at 8:00 a.m. and 5:00 p.m.; April 21, 2011, at 8:01 a.m.; April 28, 2011, at 7:04 p.m.; April 29, 2011, at 9:27 a.m.; May 3, 2011 at 9:09 a.m.; May 4, 2011, at 9:40 a.m. and 10:50 a.m.; May 5, 2011, at 9:27 a.m. and 10:02 a.m.; May 6, 2011, at 8:51 a.m. and 9:53 a.m.; May 7, 2011, at 11:03 a.m.; May 9, 2011, at 9:36 a.m.; May 10, 2011, at 9:20 a.m.; May 11, 2011, at 9:48 a.m.; May 12, 2011, at 10:04 a.m.; May 13, 2011, at 9:44 a.m.; May 14, 2011, at 8:50 a.m.; May 16, 2011, at 9:08 a.m.; May 17, 2011, at 9:22 a.m.; May 18, 2011, at

PLAINTIFF'S COMPLAINT

9:07 a.m. and 2:12 p.m.; May 31, 2011, at 11:56 a.m.; June 1, 2011, at 10:06 a.m. and 6:41 p.m.; June 2, 2011, at 6:50 p.m.; June 3, 2011, at 9:12 a.m.; June 4, 2011, at 10:20 a.m.; June 6, 2011, at 8:43 a.m. and 10:37 a.m.; June 7, 2011, at 9:44 a.m. and 10:20 a.m.; June 8, 2011, at 9:22 a.m.; June 9, 2011, at 10:52 a.m. and 12:47 p.m.; June 10, 2011, at 10:50 a.m.; June 11, 2011, at 10:44 a.m.; June 13, 2011, at 11:05 a.m.; June 14, 2011, at 11:37 a.m.; June 15, 2011, at 11:18 a.m.; June 16, 2011, at 11:07 a.m.; June 17, 2011, at 11:14 a.m.; June 18, 2011, at 11:30 a.m.; June 20, 2011, at 2:29 p.m.; June 21, 2011, at 10:56 a.m.; and June 22, 2011, at 10:42 a.m. See Exhibit A, Plaintiff's call log.

22. Plaintiff received telephone calls from Defendant on other dates and at other times.

23. Plaintiff received telephone calls from Defendant from the following telephone number: (770) 709-3140, which the undersigned has confirmed is a telephone number belonging to Defendant. See Exhibit A, Plaintiff's call log.

24. Defendant placed repeated calls to Plaintiff's home telephone almost every day, causing Plaintiff to receive, at times, more than twenty (20) collection calls a month. See Exhibit A, Plaintiff's call log.

25. Many of Defendant's telephone calls to Plaintiff consisted of hang-up telephone calls, in that when Plaintiff picked-up the telephone the phone call would be disconnected.

26. In addition to making telephone calls to Plaintiff, Defendant also sent Plaintiff numerous collection letters.

27. Specifically, on April 8, 2011, Defendant sent written correspondence to Plaintiff seeking and demanding payment of $322.97, for five (5) checks allegedly returned for insufficient funds. See Exhibit B, Defendant's April 8, 2011, letter.

PLAINTIFF'S COMPLAINT

28. Also, on that same day, Defendant sent written correspondence to Plaintiff seeking and demanding payment of $400.00, for another five (5) checks allegedly returned for insufficient funds. See Exhibit C, Defendant's second April 8, 2011, letter.

29. In both letters, Defendant failed to identify the creditor to Plaintiff. See Exhibits B and C.

30. Instead, Defendant threatened that, "ENVISION PAYMENT SOLUTIONS has been authorized to process payment and has recorded your name, address, driver's license and banking information in our computer verification file. This could affect your check writing ability at many retail establishments." See Exhibits B and C.

31. Further, Defendant claimed that the amount it was collecting "includes a service charge and any fees allowed per check by law. Upon receipt of full payment, your account will be cleared in our database. Full check writing privileges will be restored." See Exhibits B and C.

32. Plaintiff did not understand how Defendant had the authority to affect his ability to write checks to other retail establishments and what information Defendant would communicate about him to other retail establishments which would prevent him from writing a check.

33. Then, on or about April 29, 2011, Defendant sent Plaintiff written correspondence seeking and demanding payment of $212.97 and $400.00, for checks allegedly unpaid to Dandy Mini Marts. See Exhibits D and E, April 29, 2011, letters from Defendant.

34. In these letters, Defendant threatened Plaintiff that, "ENVISION PAYMENT SOLUTIONS wishes to remind you that passing a worthless check is a civil and possible criminal violation. Failure to make payment may force us to seek other remedies to enforce the

claim." See Exhibits D and E, April 29, 2011, letters from Defendant.

35. Plaintiff understood Defendant's statements to imply that if he did not pay the alleged debt that Defendant would pursue criminal and civil claims against him.

36. On April 29, 2011, Plaintiff sent an email to Defendant seeking information on the alleged debt, including an invoice of all returned checks and penalties as well as his payments on the account. See Exhibit F, Plaintiff's email to Defendant.

37. Defendant did not provide him with any information responsive to his April 29th email or verification of the alleged debt.

38. Instead, Defendant continued to contact Plaintiff seeking and demanding payment on the alleged debts.

39. In response to Defendant's threatening letters and barrage of telephone calls, Plaintiff did make payments on the alleged debts.

40. Defendant intended to harm Plaintiff and to harass him, to obtain payment.

## CONSTRUCTION OF APPLICABLE LAW

41. The FDCPA is a strict liability statute. Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232 (5th Cir. 1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." Russell v. Equifax A.R.S., 74 F. 3d 30 (2d Cir. 1996); see also Gearing v. Check Brokerage Corp., 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); Clomon v. Jackson, 988 F. 2d 1314 (2d Cir. 1993).

42. The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor. Sprinkle v. SB&C Ltd., 472 F. Supp. 2d 1235 (W.D. Wash. 2006). The

remedial nature of the FDCPA requires that courts interpret it liberally. Clark v. Capital Credit & Collection Services, Inc., 460 F. 3d 1162 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C §1601 *et seq.*, is a remedial statute, it should be construed liberally in favor of the consumer." Johnson v. Riddle, 305 F. 3d 1107 (10th Cir. 2002).

43. The FDCPA is to be interpreted in accordance with the "least sophisticated" consumer standard. See Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985); Graziano v. Harrison, 950 F. 2d 107 (3rd Cir. 1991); Swanson v. Southern Oregon Credit Service, Inc., 869 F.2d 1222 (9th Cir. 1988). The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." Id. The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naive and trusting, against deceptive collection practices, and protects collectors against liability for bizarre or idiosyncratic interpretations of collection notices. Clomon, 988 F. 2d at 1318.

**COUNT I**
**DEFENDANT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT**

44. In its actions to collect a disputed debt, Defendant violated the FDCPA in one or more of the following ways:

    a. Defendant violated the FDCPA generally;

    b. Defendant violated §1692d of the FDCPA by harassing Plaintiff in

connection with the collection of an alleged debt;

c. Defendant violated §1692d(5) of the FDCPA, when it caused the Plaintiff's telephone to ring repeatedly or continuously with the intent to harass, annoy or abuse Plaintiff;

d. Defendant violated §1692e of the FDCPA by using false, deceptive, or misleading representations or means in connection with the collection of a debt;

e. Defendant violated §1692e(7) of the FDCPA by falsely representing or implicating that he consumer committed a crime or other conduct in order to disgrace the consumer;

f. Defendant violated §1692e(10) of the FDCPA by use false representations and/or deceptive means to collect or attempt to collect a debt;

g. Defendant violated §1692f of the FDCPA by using unfair and unconscionable means with Plaintiff to collect or attempt to collect a debt;

h. Defendant violated §1692g(a) of the FDCPA by failing to sent the consumer, within five (5) days of after its initial communication, written notification containing, in part, the name of the creditor to whom the debt is owed;

i. Defendant violated §1692g(b) of the FDCPA by failing to cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or the name and address of the creditor, and a copy of thereof is mailed to the consumer by the debt collector; and

j. Defendant acted in an otherwise deceptive, unfair and unconscionable manner and failed to comply with the FDCPA.

PLAINTIFF'S COMPLAINT

WHEREFORE, Plaintiff, HAROLD LEE KROMELBEIN, respectfully prays for a judgment as follows:

   a. All actual compensatory damages suffered pursuant to 15 U.S.C. § 1692k(a)(1);

   b. Statutory damages of $1,000.00 for the violation of the FDCPA pursuant to 15 U.S.C. § 1692k(a)(2)(A);

   c. All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff pursuant to 15 U.S.C. § 1693k(a)(3); and

   d. Any other relief deemed appropriate by this Honorable Court.

**DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff, HAROLD LEE KROMELBEIN, demands a jury trial in this case.

RESPECTFULLY SUBMITTED,

DATED: 8-25-11

KIMMEL & SILVERMAN, P.C.

By: /S/ Craig Thor Kimmel
CRAIG THOR KIMMEL
Attorney ID #57100
Kimmel & Silverman, P.C.
30 E. Butler Pike
Ambler, PA 19002
Phone: (215) 540-8888
Fax: (877) 788-2864
Email: kimmel@creditlaw.com

PLAINTIFF'S COMPLAINT