IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAROLD LEE KROMELBEIN, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 3:11-cv-01598-ARC |
| | : | |
| ENVISION PAYMENT SOLUTIONS, | : | |
| INC., | : | |
| Defendant | : | JURY TRIAL DEMANDED |

**DEFENDANT ENVISION PAYMENT SOLUTIONS, INC.'S
BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT AS TO ALL CLAIMS**

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES…………….............…..........……………………...ii

I.     PROCEDURAL HISTORY ……………………………………......1

II.    STATEMENT OF THE ISSUES………………………………………1

III.   LAW AND ANALYSIS…………………………………………......2

      A.    Summary Judgment Standard……………………………………...2

      B.    The Least Sophisticated Consumer Standard……………………...3

          1. 15 U.S.C. §§ 1692d and d(5)…………………………………...3

             i.  Call volume…………………………………………...4

             ii.  Call content…………………………………………...8

          2. 15 U.S.C. §§ 1692e, 1692e(10), and 1692f…………………...10

          3. 15 U.S.C. § 1692e(7)………………………………………...15

          4. 15 U.S.C. § 1692g(a)……………………………………….....17

          5. 15 U.S.C. § 1692g(b)………………………………………...18

IV.   CONCLUSION……………………………………………………...20

CERTIFICATE OF COMPLIANCE…………..........……………………....22

CERTIFICATE OF SERVICE……………………………….............…………23

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986)..........................................3

*Campuzano-Burgos v. Midland Credit Management, Inc.*, 550 F.3d 294
    (3d Cir. 2008)............................................................................3

*Carter v. United States,* 530 U.S. 255 (2000)...........................................14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).........................................2

*Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162
    (9th Cir. 2006)..........................................................................19

*EBC, Inc. v. Clark Bldg. Systems, Inc.*, 618 F.3d 253 (3d Cir. 2010)................2

*F.T.C. v. Check Investors, Inc.*, 502 F.3d 159 (3d Cir. 2007)........................3

*Goswami v. American Collections Enterprise*, 395 F.3d 225
    (5th Cir. 2004)..........................................................................11

*Hahn v. Triumph P'ships LLC,* 557 F.3d 755, 757 (7th Cir. 2009)..................14

*Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324
    (6th Cir. 2006)..........................................................................11

*Johnson v. Revenue Management Corp.*, 52 F. Supp. 2d 889
    (N.D. Ill. 1999).........................................................................17

*Juras v. Aman Collection Serv., Inc.*, 829 F.2d 739 (9th Cir. 1987),
    *cert. denied*, 488 U.S. 875 (1988).................................................4

*Kojetin v. C U Recovery, Inc.*, 212 F.3d 1318 (8th Cir. 2000)......................11

*Mahon v. Credit Bureau, Inc.*, 171 F.3d 1197 (9th Cir. 1999)......................17

*Martin v. Select Portfolio Serving Holding Corp.*, 2008 WL 618788
    (S.D. Ohio March 3, 2008)......................................................4, 5, 8

*McNally v. Client Services, Inc.*, 2007 WL 4561152
 (W.D. Pa. Dec. 20, 2007)………………………………….....................17

*McVey v. Bay Area Credit Service*, 2010 WL 2927388
 (N.D. Tex. July 26, 2010)……………………………………………..4

*Miller v. Javitch, Block & Rathbone*, 561 F.3d 588 (6th Cir. 2009)…………........14

*Neder v. United States,* 527 U.S. 1 (1999)…………………………………..14

*Rosenau v. Unifund Corp.*, 539 F.3d 218, 222 (3d Cir. 2008)……………………..3

*Saltzman v. I.C. Systems, Inc.*, 2009 WL 3190359
 (E.D. Mich. Sept. 30, 2009)…………………………….................................5, 8

*Smith v. Accounts Research, Inc.*, 2012 WL 289835
 (E.D. Tenn. Jan. 31, 2012)…………………………………………………..4

*Tucker v. The CBE Group, Inc.*, 710 F. Supp. 2d 1301 (M.D. Fla. 2010)………….5

*United States v. National Financial Services*, 98 F.3d 131 (4th Cir. 1996)………11

*Wahl v. Midland Credit Mgmt., Inc.,* 556 F.3d 643, 646 (7th Cir. 2009)………....14

*Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F. Supp. 2d 914
 (N.D. Ohio 2009)………………………………………………………10

**Statutes**

15 U.S.C. § 1692c(c)……………………………………………………………….6

15 U.S.C. § 1692d……………………………………………………...1, 2, 3, 4, 5

15 U.S.C. § 1692d(5)……………………………………………………...1, 2, 4, 5, 7

15 U.S.C. § 1692e ……………………………………………………………....1, 10

15 U.S.C. § 1692e(7)……………………………………………………………....1, 15

15 U.S.C. § 1692e(10)……………………………………………………………1, 10

15 U.S.C. § 1692f…………………………………………………………………1, 10

15 U.S.C. § 1692g(a)………………………………………………………1, 2, 17, 18

15 U.S.C. § 1692g(b)…………………………………………………………...2, 18

18 Pa. C.S.A. § 4105………………………………………………………….....16

**Rules**

Fed. R. Civ. P. 56……………………………………………………………...…2

**Other Authorities**

Statements of General Policy or Interpretation Staff Commentary On the Fair Debt
    Collection Practices Act, 53 Fed.Reg. 50,097, 50,106 (Fed. Trade Comm'n Dec.
    13, 1988)……………………………………………………………………...15

## I.   PROCEDURAL HISTORY

Plaintiff filed a Complaint against Envision on August 25, 2011 alleging that Envision violated the FDCPA during its attempts to collect his returned checks. Envision filed its Answer to Plaintiff's Complaint on November 15, 2011, after which the Court scheduled a telephone Case Management Conference for January 31, 2012.  The Court entered a Case Management Order on March 14, 2012, setting the case for trial on the October, 2012 trial list and setting a dispositive motion deadline of July 31, 2012.

## II.   STATEMENT OF THE ISSUES

A.   Whether the evidence proves that Envision intended to annoy, abuse, or harass Plaintiff in violation of 15 U.S.C. §§ 1692d and d(5) based on the volume of calls he received and the conversations he had with Envision's employees.

B.   Whether the evidence proves that the letters Envision mailed to Plaintiff on April 8, 2011 and April 29, 2011 included false representations and deceptive means to collect his returned checks in violation of 15 U.S.C. §§ 1692e, e(7), and e(10), and whether those letters used unfair or unconscionable means to collect his returned checks in violation of 15 U.S.C. § 1692f.

C.   Whether the evidence proves that Envision failed to mail Plaintiff the notices required by 15 U.S.C. §1692g(a).

D.     Whether the evidence proves that Envision failed to cease collection of Plaintiff's returned checks until after it obtained verification of the debt in violation of 15 U.S.C. § 1692g(b).

The evidence demonstrates that 1) its employees' conduct and the call volume did not violate §§ 1692d and d(5); 2) the content of its letters was true, therefore, the letters were not false, deceptive, unfair or unconscionable; and 3) it mailed Plaintiff the required written notices under 15 U.S.C. § 1692g(a) and provided Plaintiff an itemization of his checks.  Accordingly, Envision is entitled to summary judgment on all claims.

## III.     LAW AND ANALYSIS

### A.     Summary Judgment Standard

Fed. R. Civ. P. 56 governs when a court may grant summary judgment. Summary judgment is appropriate when a party demonstrates "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *EBC, Inc. v. Clark Bldg. Systems, Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).  Once the movant

satisfies this initial burden, the burden shifts to the non-movant to set forth specific

facts which show a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S.

242, 250 (1986).  Because the evidence clearly establishes the absence of a genuine

issue of material fact, Envision is entitled to summary judgment as to all claims.

## B.    The Least Sophisticated Consumer Standard

Congress enacted the FDCPA to protect consumers from unfair, harassing,

and deceptive collection practices without imposing unnecessary restrictions on

ethical debt collectors. *F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 171 (3d Cir.

2007) (citation and quotations omitted).  Courts analyze compliance with the

FDCPA's requirements from the perspective of the least sophisticated consumer.

*Campuzano-Burgos v. Midland Credit Management, Inc.*, 550 F.3d 294, 298 (3d

Cir. 2008) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 222 (3d Cir. 2008)).

Though this standard is less demanding than one that would inquire into a

reasonable consumer's perspective, the least sophisticated consumer standard

prevents a debt collector from liability for "bizarre or idiosyncratic interpretations"

of their communications with consumers. *Id.* at 298-99.

### 1.  Fair Debt Collection Practices Act (15 U.S.C. § 1692d and d(5))

Plaintiff generally alleges that Envision harassed him in connection with the

collection of an alleged debt.  *See* Complaint, ¶44(b).  Section 1692d states that "a

debt collector may not engage in any conduct the natural consequence of which is

to harass, oppress, or abuse any person in connection with the collection of a debt."

15 U.S.C. § 1692d.  To prevail under § 1692d, the consumer must show not only

that the contents of the calls were harassing, annoying, or abusive, but must also

establish the caller's intent.  *See Juras v. Aman Collection Serv., Inc.*, 829 F.2d

739, 741 (9th Cir. 1987), *cert. denied*, 488 U.S. 875 (1988); *Smith v. Accounts*

*Research, Inc.*, 2012 WL 289835, at *4 (E.D. Tenn. Jan. 31, 2012), citing *Martin v.*

*Select Portfolio Serving Holding Corp.*, 2008 WL 618788, at *6 (S.D. Ohio March

3, 2008) (attached hereto as **Exhibit E**).

### a.  Call volume

Plaintiff specifically alleges that Envision caused his telephone to ring

repeatedly or continuously with intent to annoy, abuse, or harass him in violation

of 15 U.S.C. § 1692d(5).  *See* Complaint, ¶44(c).  Section 1692d(5) prohibits a

debt collector from "[c]ausing a telephone to ring or engaging any person in

telephone conversation <u>repeatedly or continuously with intent to annoy, abuse, or</u>

<u>harass</u>. (Emphasis added). 15 U.S.C. § 1692d(5).  The frequency with which

Envision telephoned Plaintiff did not violate Section 1692d(5).

Commentary published by the Federal Trade Commission interpreting the

FDCPA defines the term "repeatedly" as "calling with excessive frequency under

the circumstances," and "continuously" to mean "taking a series of telephone calls,

one right after the other." *See McVey v. Bay Area Credit Service*, 2010 WL

2927388 (N.D. Tex. July 26, 2010) (citing *Federal Trade Commission Staff Commentary on the Fair Debt Collection Practices Act,* Fed.Reg. 50097) (attached hereto as **Exhibit F**); *Smith,* 2012 WL 289835, at *7.  To prevail under § 1692d, the consumer must show not only that the contents of the calls were harassing, abusive, or misleading, but must also establish the caller's intent. *Martin,* 2008 WL 618788, at *6 (attached hereto as **Exhibit G**).  In determining whether the debt collector intended to annoy, abuse, and harass the consumer, the court may consider frequency, persistence, and volume of the telephone calls. *Id.* (rejecting a §1692d(5) claim despite evidence of numerous calls because the collector did not call more than twice a day and did not call every day as falsely alleged by the consumer); *see also Saltzman v. I.C. Systems, Inc.*, 2009 WL 3190359, at *6-7 & n.4 (E.D. Mich. Sept. 30, 2009) (granting defendant summary judgment despite 20 to 50 unsuccessful calls and 10 to 20 successful calls over roughly a month which suggested a "difficulty of reaching Plaintiff, rather than an intent to harass.") (attached hereto as **Exhibit H**); *Tucker v. The CBE Group, Inc.*, 710 F. Supp. 2d 1301, 1305-06 (M.D. Fla. 2010), (finding that it was not reasonable to infer an intent to harass where the defendant made 57 calls to the plaintiff over an unspecified period, including 7 calls in one day).  In this case, Plaintiff cannot show that Envision called him with the intention of annoying, abusing, or harassing him.

Plaintiff testified that he felt harassed by the volume of calls. *See* Deposition of Harold Lee Kromelbein (hereinafter "Kromelbein Depo."), p. 25 (attached hereto as **Exhibit B**).  Envision anticipates that Plaintiff will argue that his conduct (stating that the calls were harassing, refusing to verify his name/address, blowing a whistle into the telephone) indicated his desire that Envision cease communications with him.  Under Section 1692c(c), debt collectors are obligated to comply with a written cease and desist request from a consumer. *See* 15 U.S.C. § 1692c(c).  In this case, there was no such request.  Furthermore, Envision could not be expected to interpret refusals to verify a name/address and whistle blasts into the phone, as Plaintiff's request to cease communications.  Such conduct would require Envision to call Plaintiff's telephone number, confirm his identify, and then determine whether further collection efforts would be fruitful.

Because Plaintiff cooperated with Envision by making payments toward his returned checks, Envision continued to call Plaintiff in an attempt to help him continue to repay them.  The evidence indicates that Plaintiff could not answer the phone quickly enough before Envision's collectors, per its telephone procedures, terminated the call.  This is because Envision has a policy in place to limit the number of calls placed to a consumer.  This policy prevents the call volume from becoming annoying, abusive, or harassing.

The telephone log notes several alleged calls he received from Envision that resulted in a "hang up call." *Id.* at Exhibit 2.  Envision instructs its employees to only allow the phone to ring four times.  *See* Deposition of Tarnisha Baines (hereinafter Baines Depo), p. 51 (attached hereto as **Exhibit A**).  If it takes a person more than four rings to answer the phone, he will have missed Envision's call.  *Id.*  In the instances where Plaintiff logged a "hang up" or "hang up call," he likely did not answer the phone within Envision's four-ring limit.

Plaintiff's telephone log also noted several dates where he allegedly received two calls in one day.  *See* Kromelbein Depo., Exhibit 2.

Envision also has a policy for the number of calls it allows collectors to place in one day.  Envision's collectors are only allowed to make one call to a consumer if a collector calls a consumer and speaks to him or if the collector leaves a message.  *Id.* at pp. 19-20.  If the collector does not speak to or leave a message for the consumer on the first attempt, Envision allows the collector to place one additional call to the consumer that day.  *Id.* at p. 20.  That policy is consistent with Plaintiff's telephone log which shows that Envision placed two calls to Plaintiff in one day on April 20, May 4, 5, 6, 18, June 1, 6, and 9.  *See* Kromelbein Depo., Exhibit 2.  Such a policy prevents Envision from placing an excessive number of calls which could show intent to annoy, abuse, or harass.

Section 1692d(5) does not state that a debt collector cannot place multiple calls to a consumer in one day or that a debt collector cannot place calls to a consumer on successive days. According to the log, Envision's collectors adhered to its collection policies and procedures which are designed to prevent annoying, abusive, or harassing conduct. The telephone log, which documents a total of 45 telephone calls over a two-month period, simply demonstrates an inability to reach Plaintiff. *See Martin*, 2008 WL 618788, at *6; *see also Saltzman*, 2009 WL 3190359, at *6-7 & n.4. Accordingly, Envision is entitled to summary judgment on these claims.

### b. Call content

The telephone conversations also do not support this claim. Plaintiff's first documented conversation with Envision was with Abraham Martinez. On May 4, 2011, Plaintiff documented that he spoke to Mr. Martinez and that he was "no help." *See* Kromelbein Depo., Exhibit 2. Plaintiff could not describe the conversation other than to say Mr. Martinez "was of absolutely no help" and that he could not remember any other details about his conversation. *Id.* at pp. 19 and 25.

On May 6, 2011, Plaintiff claimed that he received a "nasty message." *Id.*, Exhibit 2. When asked to describe the "nasty message," Plaintiff could not describe what it said. *Id.* at p. 19.

Another entry dated May 18, 2011 noted that Plaintiff talked to "Kristy." *See id.*, Exhibit 2. He told her that he "put an $80.00 check in [that day's] mail and, again, requested that they stop the hang-up phone calls, and that [he] filed a complaint with the Federal Trade Commission or, no, that [he] will file a complaint with the Federal Trade Commission." *Id.* at p. 20. This entry is the first time that Plaintiff documented that he made any request to end hang up telephone calls. Plaintiff could not remember any other details about his conversations with Ms. Taylor. *Id.* at p. 25. Nothing in Plaintiff's recollection of the conversation indicates that Ms. Taylor annoyed, abused, or harassed Plaintiff.

Next, on June 2, 2011, there was an entry in Plaintiff's log that stated "nasty call @ 6:50 p.m. harassment." *Id.*, Exhibit 2. Plaintiff testified that he "received a nasty call at 6:50 p.m. It was basically to harass me. They were trying to annoy me." *Id.* at p. 20. However, when asked to recall the conversation, Plaintiff testified that he "[couldn't] remember the exact conversation." *Id.* According to Envision's account notes, Ms. Taylor spoke to Plaintiff and she noted that he "[b]egan to use foul language and get loud calls. Was disconnected." *See* Baines Depo., p. 55. The only person responsible for harassing or abusive behavior during the telephone conversations was Plaintiff – not Envision's collector.

Although Plaintiff testified that he recalled a total of approximately ten (10) conversations, he could not recall the specific content of the conversations and had

no recordings. *See* Kromelbein Depo., pp. 23 and 24. He also testified that during the conversations, he was made to feel like a low-life criminal. *Id.* at pp. 25-26. Yet, when asked to provide greater detail, Plaintiff stated "I don't want to describe any more detail than that. It says it all." *Id.* at 26. However, that statement does not "say it all." Plaintiff cannot prove that Envision annoyed, abused, or harassed him if he cannot recall the content of the conversation that made him feel that way.

Envision's account notes documented only two additional conversations. Despite the fact that the person calling in would not verify his name and address, Envision's collectors were able to link the calls to Plaintiff's account based upon his telephone number appearing on caller ID. *See* Baines Depo., pp. 56-58. In both instances, collectors received telephone calls in which the caller would not identify himself and blew a whistle into the collectors' ear. *Id.* at pp. 55-59. Plaintiff had to be the person placing these calls because he testified that he placed one or two calls to Envision wherein he would blow a whistle into the phone. *See* Kromelbein Depo., p. 27. Plaintiff obviously intended to harass and abuse the collectors because he "[f]igured that was better than a 2 by 4 between the eyes." *Id.* There is not one scintilla of evidence that Envision's collectors conducted themselves in any way other than a professional, courteous, and respectful manner when dealing with Plaintiff. Thus, Envision is entitled to summary judgment on this claim.

### 2. **Fair Debt Collection Practices Act (15 U.S.C. § 1692e, e(10), and f)**

Plaintiff's Complaint also claims that Envision violated Section 1692e by using false, deceptive, or misleading representations or means in connection with the collection of a debt; violated Section 1692e(10) by using false representations and/or deceptive means to collect or attempt to collect a debt; and violated Section 1692f by using unfair and unconscionable means to collect or attempt to collect a debt. *See* Complaint, ¶¶ 44(d), 44(f), and 44(g). In support of these claims, Plaintiff alleged that the letters he received from Envision dated April 8, 2011 failed to identify the creditor and threatened that his name, address, driver's license and banking information were recorded in Envision's computer verification file, which could affect his check writing ability. *Id.* at ¶¶ 29, 30, and 32. Because the letters identified the creditor and Plaintiff's check writing ability was actually impaired as a result of Envision recording his returned checks and information with NCN, Envision is entitled to summary judgment.

"Whether a debt collector's actions are false, deceptive, or misleading under § 1692e is based on the objective test of whether the 'least sophisticated consumer' would be <u>misled</u> by defendant's actions." (Emphasis added). *Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F. Supp. 2d 914, 926 (N.D. Ohio 2009), citing *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324, 331 (6th Cir. 2006)). Examples of conduct that courts have deemed deceptive include impersonating a

public official, *Goswami v. American Collections Enterprise*, 395 F.3d 225, 226

(5th Cir. 2004), falsely representing that unpaid debts will be referred to an

attorney, *United States v. National Financial Services*, 98 F.3d 131, 138-39 (4th

Cir. 1996), and misrepresenting the amount of the debt owed, *Kojetin v. C U*

*Recovery, Inc.*, 212 F.3d 1318 (8th Cir. 2000).

The April 8, 2011 letters clearly identify Dandy Mini Marts as the

creditor/merchant. *See* Complaint, Exhibits B and C.  Plaintiff acknowledged that

he used his checks at Dandy Mini Marts. *See* Kromelbein Depo., p. 11.  He also

recalled that he began receiving calls from Envision in March or April of 2011 and

that it was about this same time that his bank notified him of the insufficient funds

checks. *Id.* at pp. 14-15.  Thus, Plaintiff cannot claim that he was unable to

determine the name of the creditor in the letters since his notice from the bank

coincided with the arrival of Envision's letters.  Any perceived confusion by

Plaintiff as to the identity of the creditor would be a bizarre or idiosyncratic

interpretation of Envision's letter which the least sophisticated consumer standard

guards against.

Turning to the other branch of this claim, Envision must indicate that the

consumer's check writing ability may be impaired because it is a consequence

which can happen if the consumer does not repay his returned checks.  The failure

to advise the consumer of this consequence would constitute a violation of these

12

sections.  Two important distinctions must be brought attention.  First, the letter stated Plaintiff's check writing ability <u>could</u>, not will, be affected.  Second, the letter stated that his check writing ability could be affected at <u>many</u>, not all, retail establishments.  These limitations allow for the possibility that Plaintiff's ability to write checks will be unaffected at those merchants who do not subscribe to NCN.

Ms. Baines explained that the "computer verification file" referenced in the letter is a database maintained by NCN and Envision, who is a member of NCN.  *See* Baines Depo., p. 64.  NCN is a service that allows its members to run a consumer's check through a check verification machine to determine whether to accept or decline the check based on whether there are outstanding checks written by the consumer.  *Id.* at p. 33.  When Envision receives checks from its clients,[1] it scans the checks and keys in information about the consumer from his checks.  *Id.* at pp. 12-14.[2]

---

[1] Instead of coming from the clients, the returned checks come directly from the clients' banks.  *Id.* at p. 13.

[2] If Plaintiff's checks included his driver's license number, that information would have been recorded.  *Id.* at p. 29.  Ms. Baines admitted that the letter incorrectly stated that Plaintiff's driver's license was recorded.  *Id.* at p. 65.  However, because Envision does receive some checks with driver's license numbers, it makes sure to notify the consumer that the information could be recorded in its database.  *Id.* at pp. 64-65.

Plaintiff will likely argue that this statement is a false representation.  However, Plaintiff must show a material misrepresentation to prevail on his claim.  *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588 (6th Cir. 2009).

NCN is a service that allows its members to run a consumer's check through a check verification machine to determine whether to accept or decline the check based on whether there are outstanding checks written by that consumer. *Id.* at p. 33. Because Dandy Mini Marts is one of Envision's clients, it also uses NCN to scan and verify checks it receives from its patrons before accepting them. *Id.* at p. 34. Any check made out to Dandy Mini Marts that is returned for sufficient funds is sent to Envision. *Id.* at p. 13, 15. Plaintiff's returned checks were sent to Envision, and Envision added Plaintiff's information to the NCN database. *Id.* at p. 13, 15, 18.

---

We also reject Miller's claim on materiality grounds. Writing for the Seventh Circuit, Judge Easterbrook recently observed that "[m]ateriality is an ordinary element of any federal claim based on a false or misleading statement." *Hahn v. Triumph P'ships LLC,* 557 F.3d 755, 757 (7th Cir. 2009) (citing *Carter v. United States,* 530 U.S. 255 (2000); *Neder v. United States,* 527 U.S. 1 (1999)). Seeing no "reason why materiality should not equally be required in an action based on § 1692e," Judge Easterbrook found a statement "false in some technical sense" immaterial. *Id.* (quoting *Wahl v. Midland Credit Mgmt., Inc.,* 556 F.3d 643, 646 (7th Cir. 2009)). "A statement cannot mislead unless it is material, so a false but non-material statement is not actionable." *Id.* We agree.

*Miller,* 561 F.3d at 596.

In this case, the focus of Plaintiff's argument is that he could not determine the name of the creditor and he could not understand how his check writing ability would be affected. Regardless, Plaintiff should be unaffected by the statement about the driver's license since he does not have one. *See* Email from Plaintiff's counsel to the undersigned dated July 18, 2012 (attached hereto as **Exhibit D**).

Plaintiff testified that Dandy Mini Marts refused to accept his checks after the returned checks were sent to Envision. *See* Kromelbein Depo., p. 12. Thus, the reason Plaintiff was unable to cash his checks at Dandy Mini Marts was that his outstanding checks were in the NCN database. After he repaid all of the returned checks, he would be able to cash checks at Dandy Mini Marts and any other merchant who was a member of NCN. Accordingly, Envision is entitled to summary judgment on these three claims.

### 3. Fair Debt Collection Practices Act (15 U.S.C. § 1692e(7))

Another of Plaintiff's claims is that Envision violated Section 1692e(7) because he felt threatened that Envision would pursue criminal and civil claims against him if he did not repay the returned checks. *See* Complaint, ¶¶ 35 and 44(e). That claim is based on the letters Envision mailed to Plaintiff on April 29, 2011 which stated, in part:

> ENVISION PAYMENT SOLUTIONS wishes to remind you that passing a worthless check is a civil and possible criminal violation. Failure to make payment may force us to seek other remedies to enforce the claim.

*Id.* at Exhibits D and E. (Capitalization in original.)

Section 1692e(7) proscribes the following conduct: "The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer." 15 U.S.C. § 1692e(7). The Federal Trade Commission lists a "[f]alse allegation of fraud" or a "[m]isrepresentation of criminal law" as

violations of § 1692e(7). *See* Statements of General Policy or Interpretation Staff

Commentary On the Fair Debt Collection Practices Act, 53 Fed.Reg. 50,097,

50,106 (Fed. Trade Comm'n Dec. 13, 1988).  Envision's letter does not fall within

either of these categories.  Furthermore, because Envision has brought lawsuits

against other consumers in Pennsylvania who failed to repay their accounts,

Envision's letter was not a threat, but a notice to Plaintiff that it may exercise other

remedies to collect his returned checks.  Thus, Plaintiff cannot prove that Envision

sent the letters in order to disgrace him.

Ms. Baines explained that the reference to civil and criminal violations

means that the consumer could be taken to court. *See* Baines Depo., p. 68.

Envision has brought lawsuits with Pennsylvania magisterial district judges.[3] *Id.* at

p. 70 and Exhibit 6 attached thereto.  Some of the lawsuits were criminal in nature

because warrants were issued. *Id.* at p. 72.  If a criminal lawsuit is filed, the

consumer is charged with writing a bad check. *Id.* at p. 73.  However, Envision did

not file a lawsuit against Plaintiff (*Id.* at p. 73) and stopped all collection activity

after it received a cease and desist request from Plaintiff's counsel dated July 11,

2011. *Id.* at p. 28; *see also* letter from Kimmel & Silverman, P.C. dated July 11,

2011 (attached hereto as **Exhibit C**).

---

[3] In Bradford County, Pennsylvania, the county in which Plaintiff resides and
Dandy Mini Marts is located, an individual or business can file a "private criminal
complaint."  County detective must approve the filing and then a hearing is set.
The Defendant must attend the hearing or a warrant is issued.

Envision's April 29, 2011 letters do not contain false allegations of fraud and they do not misrepresent Pennsylvania criminal law. In fact, Pennsylvania has a criminal offense entitled "Bad Checks" codified at 18 Pa. C.S.A. § 4105 – Bad Checks. Thus, Plaintiff's returned checks could constitute a violation of that statute. For these reasons, Envision is entitled to summary judgment on this claim.

### 4. Fair Debt Collection Practices Act (15 U.S.C. § 1692g(a))

Plaintiff cannot prevail on his claim under 15 U.S.C. § 1692g(a) because Envision provided him with the notice required under that section. Section 1692g(a) requires that a debt collector *send* a debtor notice of his rights within five (5) days after the initial communication. 15 U.S.C. § 1692g(a). The case law interpreting section 1692g(a) is clear: "'[A] debt collector shall . . . *send* the consumer a written notice. . . .'" *Id.* (emphasis added). Nowhere does the statute require receipt of the notice. *Mahon v. Credit Bureau, Inc.*, 171 F.3d 1197, 1201 (9th Cir. 1999). *See also Johnson v. Revenue Management Corp.*, 52 F. Supp. 2d 889, 892 (N.D. Ill. 1999); *McNally v. Client Services, Inc.*, 2007 WL 4561152 at *4, (W.D. Pa. Dec. 20, 2007) (citing *Mahon*) (attached hereto as **Exhibit I**). Thus, §1692g(a) only requires that a debt collector send the notice of debt. *Mahon*, 171 F.3d at 1201.

On April 8, 2011, two letters were sent to Plaintiff regarding his returned checks. *See* Complaint, Exhibits B and C.[4]  Those letters included the notices required under 15 U.S.C. § 1692g(a).  *Id.*  Envision mails a validation notice to the consumer the same day it receives a check and it gives the consumer a courtesy call. *See* Baines Depo., p. 18.  Envision talked to Plaintiff on April 8, 2011, which would have been its initial communication with him.  *Id.* at p. 42.  Since Envision mailed Plaintiff the letters the same day, it complied with Section 1692g(a). Envision makes a record in its computer system of when it sends the validation notice by recording the date next to each check.  *Id.* at p. 35 and Exhibit 5 attached thereto.  Plaintiff obviously received the validation notices since he attached them to his Complaint.  As such, he has no evidence to refute that Envision sent him the notice required by Section 1692g(a).  Accordingly, Envision is entitled to summary judgment as to this claim.

### 5.  Fair Debt Collection Practices Act (15 U.S.C. § 1692g(b))

Plaintiff's last claim alleges that Envision failed to cease collection of his returned checks until it obtained "verification of the debt or the name and address of the creditor, and a copy thereof is mailed to the consumer by the debt collector." *See* Complaint, ¶44(h).  In support of this claim, Plaintiff alleges that he sent an

---

[4] Validation notices for the other two checks were mailed to Plaintiff on January 3, 2011 for check number 3061 ($5.00) and on April 8, 2011 for check number 3052 ($50.00).  *See Id.* at pp. 18, 26, 36, and Exhibit 5 attached thereto.  Including fees, Plaintiff owed $115.00 for those two checks.

email to Envision on April 29, 2011 "seeking information on the alleged debt[.]" *Id.* at ¶36 and Exhibit F attached thereto.  At his deposition, Plaintiff also claimed that he may have made a hand-written request along with one of the payments he mailed to Envision.  *See* Kromelbein Depo., p. 35.  Section 1692g(b) clearly states that if a consumer notifies the debt collector that he disputes any portion of the debt or requests the name and address of the original creditor, the debt collector is to cease collection until it obtains the information.  *See* 15 U.S.C. § 1692g(b). There is no merit to this claim because Plaintiff's email simply indicated that he wanted "an itemized invoice of all returned checks and penalties and the payments [he] made."  *See* Complaint, Exhibit F.

On April 18, 2011, one of Envision's employees noted a request for an itemized statement of the unpaid balance which accompanied the payment Envision received that day.  *See* Baines Depo., p. 45.  Per Envision's procedures, it did not respond to the request until Plaintiff's payment cleared, so that the response would reflect an accurate balance.  *Id.* at p. 46.  Plaintiff also called in and talked to an Envision collector that day and asked to be called the following week to set up another payment.  *Id.* at 48.  When the collector called Plaintiff back on April 20, 2011, Plaintiff stated that he was being harassed, that he should not be receiving

calls, and then he hung up. *Id.*[5] The collector called again the next day, but was

unable to reach the Plaintiff. On April 29, 2011, Envision mailed Plaintiff a letter

containing an itemized list of his remaining checks. *Id.* at pp. 62-63 and Exhibit 5

attached thereto.[6] Thus, the evidence in this case shows that 1) Envision received a

written request for an itemized statement; 2) despite the written request, Plaintiff

asked for collection activity to continue by asking for a return call to set up another

payment; and 3) Envision responded to the written request, and possibly Plaintiff's

email request, with the letters mailed to Plaintiff on April 29, 2011 (both of which

identified the creditor and included an itemization of the amount due).

Accordingly, Envision is entitled to summary judgment on this claim.

## IV.   **CONCLUSION**

Plaintiff fails to raise a genuine issue as to any material fact in any of his

claims. Therefore, Envision is entitled to summary judgment on all claims and

Plaintiff's Complaint must be dismissed with prejudice.

---

[5] Consumers can waive their request to cease communications by requesting information through a call back from the debt collector. *See Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1172 (9th Cir. 2006).

[6] Envision has no record that it received Plaintiff's email that day.

Respectfully submitted,

FINEMAN KREKSTEIN & HARRIS, P.C.

By:        /S/ Jennifer Tatum Root
           RICHARD J. PERR, ESQ. (PA 72883)
           JENNIFER TATUM ROOT, ESQ. (PA 308693)
           BNY Mellon Center
           1735 Market Street, Suite 600
           Philadelphia, PA  19103-7513
           (v) 215-893-9300; (f) 215-893-8719
           e-mail:    rperr@finemanlawfirm.com
                       jroot@finemanlawfirm.com
           Attorneys for Defendant

Dated:    July 27, 2012

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.8(b)(2)

I, JENNIFER TATUM ROOT, ESQUIRE, hereby certify that the foregoing Brief in Support of Motion for Summary Judgment complies with the word count limitations set forth in L.R. 7.8(b)(2).  The word count is 4,997.

FINEMAN KREKSTEIN & HARRIS, P.C.

By:      /S/ Jennifer Tatum Root
RICHARD J. PERR, ESQ. (PA 72883)
JENNIFER TATUM ROOT, ESQ. (PA 308693)
BNY Mellon Center
1735 Market Street, Suite 600
Philadelphia, PA  19103-7513
(v) 215-893-9300; (f) 215-893-8719
e-mail:     rperr@finemanlawfirm.com
              jroot@finemanlawfirm.com
Attorneys for Defendant

Dated:      July 27, 2012

## CERTIFICATE OF SERVICE

I, JENNIFER TATUM ROOT, ESQUIRE, hereby certify that on or about

this date, I served a true and correct copy of the foregoing electronically, or by first

class mail, postage prepaid, or telecopy on the following:

> Craig Thor Kimmel, Esquire
> Tara Leigh Patterson, Esquire
> Kimmel & Silverman, PC
> 30 East Butler Pike
> Ambler, PA  19002
> (v) 215-540-8888 X 148; (f) 215-540-8817
> kimmel@creditlaw.com; tpatterson@creditlaw.com
> Attorneys for Plaintiff


_____ /S/ Jennifer Tatum Root_____
JENNIFER TATUM ROOT, ESQUIRE

Dated: _____ July 27, 2012 _____