**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HAROLD LEE KROMELBEIN,** | : | |
| **Plaintiff,** | : | |
| | | **Civil Action No. 3:11-CV-1598** |
| **v.** | : | |
| **ENVISION PAYMENT** | : | **(JUDGE MANNION)** |
| **SOLUTIONS, INC.,** | | |
| | : | |
| **Defendants.** | | |

## MEMORANDUM

Before the court is defendant Envision's motion for summary judgment, (Doc. No. 18), seeking dismissal of plaintiff's Fair Debt Collection Practices Act (FDCPA) claims filed under 15 U.S.C. §1692d, 15 U.S.C. §1692e, 15 U.S.C. §1692f, and 15 U.S.C. §1692g. (Doc. No. 18.) After a thorough review of the record and, viewing the evidence in the light most favorable to the nonmoving party, the court will **GRANT IN PART** and **DENY IN PART** the defendant's motion for summary judgment.

## BACKGROUND

Between December 10, 2010, and December 22, 2010, plaintiff wrote checks totaling $722.97 to Dandy Mini Marts, but they were subsequently returned for insufficient funds. (Doc. No. 19, at 1.) Dandy forwarded the bad checks to Envision Payment Solutions Inc., a company specializing in overdue

debt collection, and later refused to accept any more checks from plaintiff. (Doc. No. 19, at 7.)

Envision is a member of National Check Network (NCN), "a service that allows its members to run checks through a verification machine to determine whether to accept or decline the check based on whether there are outstanding checks written by that consumer." (Doc. No. 19, at 7.) Because Dandy Mini Marts is a client of Envision, it also utilizes NCN's check verification services. (Doc. No. 19, at 7.) Envision's company policy requires it to send an electronic file of all returned checks to NCN every night, and Envision followed that policy in plaintiff's case. (Doc. No. 19, at 7; Doc. No. 33, Att. 8, at 6.) Therefore, other NCN clients would be notified about plaintiff's outstanding bad checks if plaintiff attempted to pay by check at one of those establishments. (Doc. No. 19, at 7-8; Doc. No. 33, Att. 8, at 5-6.)

Plaintiff claims that Envision began making collection calls to his house in late January or early February 2011, (Doc. No. 33, Att. 1, at 1), while defendant alleges that it began making calls in March or April. (Doc. No. 20, Att. B., at 14.) Plaintiff claims that Envision called him forty-five times between April 20 and June 22, 2011, but defendant alleges that it only called him fourteen times during that same period. (Doc. No. 40, at 2; Doc. No. 33, at 13-16.) The parties appear to agree that Envision also corresponded with plaintiff via collection letters during this two month period. (Doc. No. 33, at 7.) Plaintiff

2

also claims that defendant would hang up on him right before he answered the phone. (Doc. No. 33, Att. 8.) More specifically, he testified that it usually takes him two or three rings to get to the telephone when he receives a call. (Doc. No. 33, Att. 8.) He claims that, when Envision called him, they would hang up by the second or third ring so that no one was on the line when plaintiff answered. (Doc. No. 33, Att. 8, at 2.) Defendant disputes this, arguing it has a policy that instructs employees to hang up after four rings.[1] (Doc. No. 19, at 2.) The parties agree, however, that Envision had a policy which allowed its employees to call a debtor twice in one day if, during the first call, Envision was unable to make contact with the debtor. (Doc. No. 19, at 3; Doc. No. 33, Att. 8, at 3.) Plaintiff does not dispute the policy but argues that he was nevertheless contacted multiple times a day, even when he had previously spoken with an Envision representative that same day. (Doc. No. 33, Att. 8, at 2-3.)

On May 4, 2011, plaintiff received a call from a man he identified as Abraham Martin, a representative and debt collector at Envision. (Doc. No. 19, at 3.) Plaintiff explained that he "was of absolutely no help," (Doc. No. 19, at 3), and that he was "trying to cooperate with [the] company [during the call] to pay the debt that [he] had incurred [but] nothing satisfied them." (Doc. No. 33, Att. 8, at 3.) Plaintiff also said that he had a "nasty message" from an Envision

---

[1]Plaintiff does not specify whether the policy requires the phone to ring a minimum or a maximum of four times.

employee on his answering machine on May 6. (Doc. No. 33, at 3.) Defendant, on the other hand, contends that Mr. Martin never made contact with plaintiff but spoke to a male who would not verify his address,[2] became irate and rude, refused to give any information, and hung up on him. (Doc. No. 19, at 3.)

On May 18, Christy Taylor, another Envision employee contacted plaintiff and spoke with him about his debt. (Doc. No. 19, at 4.) Plaintiff told Ms. Taylor that he "put an $80.00 check in [that day's] mail, . . . requested that [Envision] stop the hang-up phone calls," and notified her that "[he would] file a complaint with the Federal Trade Commission." (Doc. No. 19, at 4.) Plaintiff's notes also indicate that he told Ms. Taylor that Envision was harassing him and that he was keeping track of every call. (Doc. No. 19, at 4.) Because plaintiff notified her that he had sent a check to Envision, Ms. Taylor placed his account "on hold" to prevent further collection activity until the check was received. (Doc. No. 19, at 4.)

Plaintiff received another call on June 2, 2011, which he described as "nasty"; he claims the purpose of the call was to harass and annoy him, (Doc. No. 19, at 4), but does not recollect the particular details of the conversation.

---

[2]Envision asks for verification information before speaking with someone over the phone about their account to make sure Envision is speaking to the correct person. Therefore, because the person on the other end of the line would not provide any information about himself, Envision could not absolutely identify the speaker as plaintiff.

4

(Doc. No. 19, at 5.) Plaintiff further claims that Envision's calls made him feel like a "low-life criminal" and that the Envision employees "implied that they could cause [him] all kinds of problems if [he] didn't comply with their request immediately." (Doc. No. 19, at 5; Doc. No. 33, Att. 8, at 4.) Ms. Taylor, the representative who placed the call, countered this testimony by saying that plaintiff would not verify his address, told her that Envision was harassing him, and began to use loud, foul language. (Doc. No. 19, at 5.)

On June 3 and 6, several Envision employees received calls from a man who would not identify himself but proceeded to blow a whistle into the phone. (Doc. No. 19, at 5.) While the caller never identified himself, plaintiff admitted that he made a call to Envision on both days and blew a whistle into the phone while speaking with Envision employees. (Doc. No. 19, at 5-6; Doc. No. 33, Att. 8, at 5.) Furthermore, the number that the whistle blower used to call Envision was the same number that was registered to plaintiff's account in Envision's database. (Doc. No. 33, Att. C, at 56-58.)

After plaintiff made several payments on his account, he emailed an Envision employee to request an itemized invoice of his outstanding balance. (Doc. No. 19, at 6.) Because he submitted his request concurrently with a check payment, Envision waited to respond until the check cleared in order to ensure that it reported an accurate account balance. (Doc. No. 19, at 6.) Plaintiff sent another request for an itemized invoice on April 29 by email, and

Envision mailed plaintiff an invoice that same day. (Doc. No. 19, at 6.)

As stated above, plaintiff received several letters from Envision throughout the time period in question in this case. (Doc. No. 33, at 7.) Two of the letters stated, "ENVISION PAYMENT SOLUTIONS has been authorized to process payment and has recorded your name, address, driver's license number and banking information in our computer verification file. This could affect your check writing ability at many retail establishments." (Doc. No. 33, at 8.) Envision also stated in several of its letters, "This amount due includes a service charge and any fees allowed per check by law. Upon receipt of full payment, your account will be cleared in our database. Full check writing privileges will be restored." (Doc. No. 33, at 8.) Finally, Envision explained in two of its letters, "ENVISION PAYMENT SOLUTIONS wishes to remind you that passing a worthless check is a civil and possible criminal violation. Failure to make payment may force us to seek other remedies to enforce the claim." (Doc. No. 33, at 8.)

## **STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, the discovery [including depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that, "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden,

the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## DISCUSSION

### A.    Harassment or Abuse (15 U.S.C. §1692d)

Section 1692d of the FDCPA provides, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §1692d. The statute enumerates a non-exhaustive list of conduct that violates the act, including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. §1692d(5). Plaintiff's

8

complaint alleged claims under §1692d and §1692d(5), and defendant Envision moves for summary judgment, arguing that no reasonable jury could find for plaintiff because neither the call volume nor the call content violated these provisions of the FDCPA. (Doc. No. 20, 3-10.)

The question of whether a debt collector engages in "harassing, annoying, or abusive" conduct is ordinarily an issue of fact for jury. Regan v. Law Offices of Edwin A. Abrahamsen & Associates, P.C., 08-CV-5923, 2009 WL 4396299, \*6 (E.D.Pa. 2009); Derricotte v. Pressler & Pressler, LLP, 10-CV-1323, 2011 WL 2971540, \*3 (D.N.J. 2011). Therefore, courts will usually only grant summary judgment on this question if "the conduct at issue unequivocally has–or does not have–the natural consequence of harassing, oppressing, or abusing the consumer as a matter of law." Regan, 2009 WL 4396299, \*6. As such, the court should deny a motion for summary judgment if the court determines that a reasonable juror could find for the nonmoving party. Illes v. Beaven, 12-CV-395, 2012 WL 2836581, \*2 (M.D.Pa. 2012). The same is true for the question of intent to annoy, abuse, or harass. Hendricks v. CBE Group, Inc., 891 F.Supp.2d 892, 896 (N.D.Ill. 2012) (applying "no reasonable juror" standard); Chavious v. CBE Group, Inc., 10-CV-1293, 2012 WL 113509, \*2 (E.D.N.Y. 2012) (caller's intent is question for jury); Holland v. Bureau of Collection Recovery, 801 F.Supp.2d 1340, 1342-43 (M.D.Fla. 2011) ("numerous courts have held that such intent is a question of fact for the jury").

9

### 1.   Section 1692d

Although defendant claims to be moving for summary judgment under both §1692d and §1692d(5), defendant fails to substantively address §1692d in the body of its brief in support. Nonetheless, because defendant appears to raise the issue and plaintiff argues it in his brief in opposition, (Doc. No. 33, at 12-13), the court will take a moment to address it here. One of the main foundations for plaintiff's §1692d claim is the volume of calls he received, a number that he places at forty-five during the relevant time period. (Doc. No. 33, at 13.) Defendant, on the other hand, argues that its call log only shows fourteen calls. (Doc. No. 40, at 2.) This disagreement demonstrates the existence of a dispute of fact, and, because the court believes the volume of calls "might affect the outcome of the suit under the governing law," this dispute of fact is material. State Auto Property & Cas. Ins. Co. v. Bonk, 11-CV-1796, 2013 WL 3356045, *5 (M.D.Pa. 2013).

Even if there was not a genuine dispute of fact, "the question of whether conduct harasses, oppresses, or abuses is a question of fact for a jury to decide." Fallas v. Cavalry SPV I, LLC, 12-CV-5664, 2013 WL 1811909, *8 (D.N.J. 2013); see also Regan v. Law Offices of Edwin A. Abrahamsen & Associates, P.C., 08-CV-5923, 2009 WL 4396299, *6 (E.D.Pa. 2009). With this in mind, the court is unable to determine as a matter of law that no reasonable juror would be able to find for plaintiff regardless of whether the true number of

calls was fourteen or forty-five. Plaintiff has provided evidence that defendant called plaintiff several times a day, even when plaintiff spoke with an Envision representative. (Doc. No. 33, at 7; Doc. No. 33, Att. 1.) Furthermore, the record indicates that defendant hung up on plaintiff after several telephone rings on many different occasions. (Doc. No. 33, Att. 8.) Finally, plaintiff indicated during depositions that Envision representatives made him feel like a "low-life criminal," indicated that Envision "could cause [plaintiff] all kinds of problems if [he] didn't comply with their [requests]," and left him nasty messages. (Doc. No. 20, Att. B, at 25-26.) A reasonable jury could infer from these facts, when viewed in the aggregate, that the least sophisticated debtor would feel harassed, oppressed, or abused in violation of 15 U.S.C. §1692d.

Defendant argues that, even if the court determines that the number of calls was harassing, oppressive or abusive, plaintiff failed to establish that defendant Envision intended for its conduct to have that effect. (Doc. No. 40, at 2.) Defendant has conflated the different standards for §1692d and §1692d(5) and added an intent element to §1692d where the courts have expressly rejected one. Gryzbowski v. I.C. System, Inc., 691 F.Supp.2d. 618 (M.D.Pa. 2010) (explaining that FDCPA generally imposes strict liability); Diaz v. D.L. Recovery Corp., 486 F.Supp.2d. 474, 478 (E.D.Pa. 2007) ("statute implies that the intent of the debt collector is irrelevant"); Yentin v. Michaels, Louis & Associates, 11-CV-0088, 2011 WL 4104675, *14 (E.D.Pa. 2011)

(finding that FDCPA imposes strict liability where Congress omitted intent language). While subsection five requires "intent to annoy, abuse, or harass," (15 U.S.C. §1692d(5)), §1692d merely prohibits "conduct the natural consequence of which is to harass, oppress, or abuse," and is, therefore, a strict liability statute. Bryzbowski v. I.C. System, Inc., 691 F.Supp.2d 618, 625-26 (M.D.Pa. 2010); see also Marisco v. NCO Financial Systems, Inc., — F.Supp.2d —, 2013 WL 2285195, *5 (E.D.N.Y. 2013) (explaining that §1692d(5) is an exception to the strict liability of the FDCPA). Therefore, defendant's intent is irrelevant to this claim. In light of the foregoing, defendants motion for summary judgment will be **DENIED** as to plaintiff's §1692d claim.

### 2.    Section 1692d(5)

As noted above, §1692d(5) prohibits "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. §1692d(5). For the purposes of the FDCPA, continuously means "making a series of telephone calls, one right after the other," and repeatedly means "calling with excessive frequency under the circumstances." Carr v. NCO Financial Systems, Inc., 11-CV-2050, 2011 WL 6371899, *2, n. 3 (E.D.Pa. 2011) (citing FTC Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097-02, 50105 (Dec. 13, 1988)). Courts have used a number of different factors to infer whether a debt collector acted with

the requisite intent, primarily focusing on the frequency, pattern and substance of the calls. [Nyce v. Sterling Credit Corp., 11-CV-5066, 2013 WL 1388051, \*4 (E.D.Pa. 2013)](). The court will address all three of these factors in turn.

### a.    Call Frequency and Pattern

Defendant claims that no reasonable juror could find for plaintiff on this claim because the call frequency simply does not give rise to an inference that defendant intended to annoy, abuse, or harass. As mentioned above, the parties sharply dispute the frequency of Envision's calls during the relevant two month period in 2011, and, therefore, there is a dispute of material fact as to an essential factor of plaintiff's §1692d(5) claim.

Defendant argues that, even if it did call plaintiff forty-five times and several times a day, its calls merely manifest Envision's desire to help plaintiff pay off his outstanding debt and "simply demonstrate[] an inability to reach Plaintiff." (Doc. No. [20](), at 11, 13.) Further, it argues that Envision's policy of hanging up after four rings was not intended to be a harassment technique; to the contrary, it was intended to prevent harassment from excessive ringing. (Doc. No. [20](), at 12.) Finally, while defendant acknowledges that its collectors called plaintiff more than once a day on several occasions, it argues that this is merely company policy and that the statute does not prohibit placing multiple calls in one day. (Doc. No. [20](), at 12-13.)

Defendant's arguments concerning call frequency, while perhaps

probative of lack of intent, fail to convince the court that no reasonable juror could find an intent to annoy, abuse, or harass. As an initial matter, it is true that the statute does not expressly prohibit multiple calls per day, but it is the province of the fact finder to determine whether the call volume and pattern create an inference of intent. Chavious v. CBE Group, Inc., 10-CV-1293, 2012 WL 113509, *2 (E.D.N.Y. Jan. 13, 2012) ("The caller's intent is often a jury question"). As such, it is not dispositive that the statute does not, on its face prohibit a particular number of calls per day.

As for the hang up calls, the parties sharply split on the inferences that should be drawn from the available evidence. Plaintiff argues that these calls evince an intent to harass while defendant argues that it strongly indicates an intent to avoid harassment. (Doc. No. 33, at 14-15; Doc. No. 4, at 4.) Expounding on its argument, defendant implies that it would harass debtors more to allow the phone to keep ringing than to hang up after several rings and call back later. (Doc. No. 4, at 4.) Plaintiff, on the other hand, argues that it is more harassing to hang up after the debtor has gone to the effort of answering the phone. (Doc. No. 33, at 14-15.) The court believes that a reasonable juror could find for either party on these facts and, therefore, the hang up calls do not by themselves permit the court to grant summary judgment.

Defendant next argues that Envision's employees were simply following company policy by calling multiple times per day and hanging up after several

rings, its logic apparently being that a company policy immunizes Envision from FDCPA liability. (Doc. No. 20, at 6-8.) This argument is inapposite because company policy can be just as much a violation of §1692d(5) as the rogue act of an individual employee. If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights. 15 U.S.C. §1692k(b)(1) (frequency and persistence of noncompliance is factor used to determine damages); Edwards v. Niagara Credit Solutions, Inc., 586 F.Supp.2d 1346, 1354 (N.D.Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

### b. Call Substance

Defendant points to its company call log and plaintiff's deposition to show that nothing its employees said during conversations with plaintiff creates an inference of intent to annoy, abuse, or harass. (Doc. No. 20, at 8-10.) The first call it addresses is one made by Abraham Martinez on May 4, 2011, a call plaintiff described as "absolutely no help." (Doc. No. 20, at 13.) On May 6, 2011, plaintiff received another call from Envision and noted that the employee left him a "nasty message," although he was unable to recall the specific contents of the message. (Doc. No. 20, at 13.) Finally, plaintiff states that he was made to feel like a "low-life criminal" but would not expound on his description, saying, "I don't want to describe any more detail than that. It says

15

it all." (Doc. No. 20, at 26.)

While plaintiff provides rather conclusory evidence of intent, it is enough to withstand a motion for summary judgment in this case. Plaintiff's testimony indicates that he either had trouble recalling the specific content of Envisions calls or simply did not believe that his testimony required more detailed explanation. Whatever the reason, he testified that the calls were harassing, that the messages were nasty, and that he was made to feel like a "low-life criminal." The conclusory nature of plaintiff's testimony concerning intent certainly speaks to its probative value and is something that the jury may consider at trial. At this stage, however, this evidence is enough to mount a successful challenge to defendant's motion, even if it is factually conclusory. When viewed alongside the evidence concerning the volume and pattern of calls over the two month period, the court finds that a reasonable juror could conclude that defendant Envision acted with intent to harass, oppress, or abuse. Therefore, defendant's motion for summary judgment on the §1692d(5) claim will be **DENIED**.

**B.    False or Misleading Statements 15 U.S.C. §1692e**

Section 1692e of the FDCPA prohibits a debt collector from using "any false, deceptive or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. A statement is deceptive under the

16

FDCPA if "it can be reasonably read to have two or more different meanings, one of which is inaccurate." Campuzano-Burgos v. Midland Credit Management, Inc., 550 F.3d 294, 298 (3d Cir. 2008). Section 1692e enumerates a non-exhaustive list of conduct which violates the provisions of this section of the Act. Id. Relevant to this motion, subsection 10 prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," and subsection 7 prohibits, "[t]he false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer." 15 U.S.C. §1692e(7) &10.

In determining whether a statement is deceptive, the court must view it from the perspective of "the least sophisticated debtor."[3] Id. This objective standard ignores a debtor's actual intellect or that of a reasonable consumer

---

[3]The Third Circuit explained the purpose behind this standard in Brown v. Card Service Center:

Because the FDCPA is a remedial statute, we construe its language broadly, so as to effect its purpose. Accordingly, in considering claims under another provision of the FDCPA, we have held that certain communications from lenders to debtors should be analyzed from the perspective of the least sophisticated debtor. . . . This lower standard comports with a basic purpose of the FDCPA: as previously stated, to protect all consumers, the gullible as well as the shrewd, the trusting as well as the suspicious, from abusive debt collection practices. Brown v. Card Service Center, 464 F.3d 450, 453-54 (3d Cir. 2006).

and asks instead whether an unsophisticated debtor would have been deceived by the correspondence. [Brown v. Card Service Center, 464 F.3d 450, 453-54 (3d Cir. 2006)](). However, the standard also assumes a willingness and ability to read and understand the plain language of collection notices. Id. The Third Circuit has said, "while the least sophisticated debtor standard protects naive consumers, it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." Id.

### 1. Failure to Identify Creditor

In his complaint, plaintiff claims that defendant failed to identify the original creditor in its collection letters, thereby subjecting Envision to liability under [15 U.S.C. §1692e](). (Doc. No. [1](), at 6.) Defendant moves for summary judgment on this claim by arguing that it did, in fact, identify the creditor on every letter is sent plaintiff. (Doc. No. [20](), at 16.) Because plaintiff failed to address this claim in the brief in opposition, the court deems the motion unopposed in this regard. However, even if plaintiff had addressed the issue, the letters that plaintiff cites unambiguously identify the original creditor under the heading "MERCHANT," directly across from the check number, check amount, and payment date. (Doc. No. [1](), Att. B & C.) Therefore, plaintiff's claim that defendant did not identify the original creditor fails. As such, the court will **GRANT** defendant's motion for summary judgment with regard to plaintiff's

claim that defendant failed to identify the original creditor.

### 2.    Notification that Personal Information Was Recorded

Plaintiff's complaint also alleges that defendant falsely represented that plaintiff's driver's license and other personal information were recorded in Envision's database in violation of §1692e of the FDCPA. (Doc. No. 1, at 6.) Defendant moves for summary judgment on plaintiff's §1692e claims, arguing that, because plaintiff did not have a driver's license,[4] he could not have been misled by defendant's false statement about his driver's license. (Doc. No. 20, at 18, n. 2.) Defendant argues that, because plaintiff could not have been misled by the statement, it was not material and, therefore, was not false, misleading, or deceptive. (Doc. No. 20, at 18, n. 2.)

Although the Third Circuit has not yet addressed the matter, several courts in this circuit have read a materiality requirement into §1692. Rogozinski v. NCO Financial Systems, Inc., 11-CV-2594, 2012 WL 5287896 (E.D.Pa. 2012); Jacques v. Solomon & Solomon P.C., 886 F.Supp.2d 429, 434 (D.Del. 2012) (addressing the issue of material omissions); Nicholls v. Portfolio

---

[4]Plaintiff claims that he did have a driver's license during the time period that Envision was calling him, but plaintiff provides no evidence to support this bare allegation, instead instructing the court to search the public records for proof. Meanwhile, defendant has presented the court with an email from plaintiff's counsel in which counsel states that plaintiff does not have a license. Therefore, for the purpose of this motion, the court will assume plaintiff did not have a driver's license.

Recovery Associates, LLC, 09-CV-5714, 2010 WL 1257738, \*3 (D.N.J. 2010). In addition, several other circuits have also recognized a materiality component. Shami v. National Enterprise Systems, — F.Supp.2d —, 2012 WL 6720698, \*7 (E.D.N.Y. 2012); Okyere v. Palisades Collection, LLC, — F.Supp.2d —, 2013 WL 1173992, \*8 (S.D.N.Y. 2013); Gabriele v. American Home Mortg. Servicing, Inc., 503 Fed.Appx. 89, 94 (2d Cir. 2012) (noting the materiality requirement without applying it to the facts of case); Hahn v. Triumph Partnerships LLC, 557 F.3d 755, 758 (7th Cir. 2009); Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 596 (6th Cir. 2009); Lembach v. Bierman, — Fed.Appx. —, 2013 WL 2501752, \*4 (4th Cir. 2013); Donahue v. Quick Collect, Inc., 592 F.3d 1027, 1034 (9th Cir. 2010). As the Eastern District of New York noted in *Shami*, "[s]ection 1692e is designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect). Shami, 2012 WL 6720698, \*7.

Defendant argues that plaintiff did not have a driver's license, so he could not have been misled to believe that Envision recorded his driver's license information. (Doc. No. 20, at 18-19.) Because he could not believe that, defendant argues, defendant's false statement was immaterial insofar as it could not have affected his decision to pay Envision. (Doc. No. 20, at 18-19.) The court agrees with defendant. As the court said in *Rogonzinski*, "[t]he least

sophisticated consumer is not absent all intelligence." [Rogonzinski v. NCO](#) [Financial Systems, Inc., 11-CV-2594, 2012 WL 5287896, *6 (E.D.Pa. 2012)](#). Even the least sophisticated consumer would not be mislead by a statement that he knows to be false, here that Envision recorded his driver's license information when plaintiff did not in fact have one. As such, plaintiff's claim that defendant violated §1692e by falsely stating that it recorded his driver's license must fail. Therefore, the court will **GRANT** defendant's motion for summary judgment on the §1692e claim related to the false statement about plaintiff's driver's license.

### 3. Notice that Check Writing Ability Could Be Affected

Plaintiff also claims in his complaint that defendant violated §§1692e and 1692e(10) by falsely stating that plaintiff's check writing abilities could be affected. (Doc. No. 1, at 6.) In its brief in support, defendant responds that it couched its language in conditional terms, such as the following:

> ENVISION PAYMENT SOLUTIONS has been authorized to process payment and has recorded your name, address, driver's license number and banking information in our computer verification file. This *could* affect your check writing ability at many retail establishments
> Please remit $322.97. . . . Upon receipt of full payment, your account will be cleared in our database. Full check writing privileges will be restored. (Doc. No. 1, Att. B, C. (emphasis added))

Defendant claims that its use of conditional language precludes the statement from being misleading because it is true that a debtor's check writing

21

abilities may be affected by writing bad checks. (Doc. No. 20, at 17-18.) Therefore, defendant argues that, regardless of the truth of the statement in light of the particular facts of this case, it is generally true that a person's check writing may be affected under these circumstances. (Doc. No. 20, at 18.) Plaintiff responds by citing *Brown v. Card Service Center*, a Third Circuit case in which the court determined that conditional language such as "can" or "may" does not always remove a statement from the provisions of §1692e. (Doc. No. 33, at 11-13.)

In *Brown*, like the case at hand, the defendant debt collector sent the plaintiff debtor a letter "telling her that unless she made arrangements to pay within five days, the matter *could* result in referral of the account to an attorney and *could* result in a legal suit being filed." Brown v. Card Service Center, 464 F.3d 450, 451 (3d Cir. 2006) (emphasis added). The plaintiff sued, arguing that the defendant violated §1692e because it had no intention of referring the account to an attorney or filing a lawsuit in that particular case. Id. In addressing the issue, the Third Circuit noted, "we conclude that it would be deceptive under the FDCPA for [defendant] to assert that it *could* take action that it had no intention of taking and has never or very rarely taken before." Id. at 455. The court also quoted the Federal Trade Commission Commentary on §1692e for the proposition that debt collectors:

may state that a certain action is possible, if it is true that such

action is legal and is frequently taken by the collector or creditor with respect to similar debts [but when the defendant] has reason to know there are facts that make the action unlikely in the particular case, a statement that the action was possible would be misleading. Id. at 455.

Here, like in *Brown*, defendant couched its letter in conditional terms. Therefore, the court must ascertain whether it was likely that plaintiff's check writing ability would be affected and, if so, whether it would be affected at "many retail establishments" as the unsophisticated consumer would understand that phrase. If it was very unlikely that plaintiff's check writing ability would be affected and only at a few retail establishments, defendant's letter would be misleading as a matter of law in violation of §1692e.

In this case, there is insufficient evidence to determine whether it was likely that plaintiff's check writing ability would be affected and, if so, at how many locations. Plaintiff states in his brief in opposition that the record does not support the contention that check writing would be affected at many establishments, only that it would be affected at stores that utilize the NCN network. (Doc. No. 33, at 14.) The court has been unable to find any evidence in the record indicating how many stores are part of the NCN network and which of these stores plaintiff often visits. Without evidence showing the actual effect on plaintiff's check writing in this case, the court is unable to determine the veracity of defendant's claims. Therefore, there exists a dispute of material fact and the court will **DENY** defendant's motion for summary judgment on the

§1692e and §1692e(10) claims relating to these facts.

### 4.  Notification of Civil and Criminal Actions

Plaintiff's complaint also alleges a violation of §1692e(7), which provides a remedy for "[t]he false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer." 15 U.S.C. §1692e(7). Plaintiff claims that defendant violated this provision by sending plaintiff a letter which stated, "ENVISION PAYMENT SOLUTIONS wishes to remind you that passing a worthless check is a civil and possible criminal violation. (Doc. No. 33, at 18.) Failure to make payment may force us to seek other remedies to enforce the claim." (Doc. No. 1, Att. D, E.) Defendant argues in its brief in opposition that it has, in fact, brought both civil and criminal actions against Pennsylvania debtors in the past, so it claims that the letter contained no false representations. (Doc. No. 20, at 20-22.) In response, plaintiff argues that defendant did not intend to bring a civil claim against plaintiff and could not bring a criminal lawsuit because Pennsylvania does not allow private criminal lawsuits. (Doc. No. 33, at 13-14.)

As noted above, a debt collector may not hedge against liability by using conditional terms if the action threatened is rarely or ever taken. Brown v. Card Service Center, 464 F.3d 450, 451 (3d Cir. 2006). Nor may a debt collector claim that it may file a lawsuit if it does not, in fact, intend to sue in that particular case. Id. At this stage of trial, the court cannot say whether or not

defendant violated §1692e(7) as a matter of law. The issue of intent is generally one for the jury unless the court determines that no reasonable juror could find for the nonmoving party. [Dewees v. Haste, 620 F.Supp.2d 625 (M.D.Pa. 2009)](). The record simply does not supply the court with sufficient information to determine the frequency with which defendant files lawsuits against debtors. Defendant points to plaintiff's exhibit F, which indicates that Envision has filed a number of lawsuits against Pennsylvania creditors, (Doc. No. [33](), Att. 6), but this document does not demonstrate what percentage of debtors have civil or criminal cases filed against them, a far more accurate indicator of defendant's inclination to sue in this case. Nor has plaintiff provided any evidence of its intent to file a civil or criminal action against plaintiff in this case. Instead, Envision merely states, "Envision's letter was not a threat, but a notice to Plaintiff that it *may* exercise other remedies to collect his returned checks." (Doc. No. 20, at 21.) At this stage of litigation, the court is unable to determine whether this statement is false, misleading, or deceptive. Therefore the court will **DENY** defendant's motion for summary judgment on these facts.

## C.    Unfair Practices: 15 U.S.C. §1692f

Section 1692f of the FDCPA provides "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." [15 U.S.C. §1692f](). This provision "operates as a catchall for conduct that is recognizably

unfair, but not explicitly enumerated in other sections of the FDCPA." [Hoover](#)

[v. Monarch Recovery Management, Inc., 888 F.Supp.2d. 589, 601 (E.D.Pa.](#)

[2012)](#). In expounding on the meaning of unfair practices, the legislative history

of §1692f states:

> A debt collector is prohibited from using any unfair or
> unconscionable means to collect debts. The following enumerated
> practices are violations: collecting amounts in excess of the debt
> or interest owed; causing charges for communications to be billed
> to a consumer; repossessing property if there is no valid security
> interest or if it is exempt by law from repossession; communicating
> information about a debt by postcard; and using symbols on
> envelopes indicating that the contents pertain to debt collection. S.
> Rep. No. 95-382, at 8 (1977).

The legislative history indicates that §1692f was designed to address

extremely unconscionable actions such as over-collecting on a debt or

embarrassing the debtor by publicizing private information about the debtor. Id.

Here, plaintiff argues that defendant violated §1692f by failing to respond to

plaintiff's request for an "itemized statement listing the amount due and the

payments he had already made," and continuing to collect on the account

despite the request. (Doc. No. [33](#), at 23.) In particular, plaintiff complains that

he asked for an itemized invoice on April 18 and April 29 and had to wait until

the 29th for a response. (Doc. No. [33](#), at 18-19.) Defendant responds by

arguing that plaintiff already had access to the information it requested, (Doc.

No. [40](#), at 9), and that Envision had to wait for one of plaintiff's checks to clear

before responding to the request. (Doc. No. 20, at 24.)

The court does not believe this small temporal delay constitutes a violation of §1692f, especially considering the dilemma facing Envision. Section 1692e, as discussed above. Therefore, the court believes it was reasonable, not unfair or unconscionable, for defendant to wait eight days before responding to plaintiff's request, at least insofar as defendant was waiting for the check to clear. Nonetheless, plaintiff claims that defendant continued its collection activity during the time it was processing plaintiff's request, so the court will address this issue next. (Doc. No. 33, at 23-24.)

The record indicates that, during the time plaintiff's request was pending, plaintiff received four calls from Envision representatives, one on April 18, two on April 20, and another on April 21. (Doc. No. 33, Att. 3.) Defendant's call records indicate that, during the April 18 call, plaintiff said he would make a payment that week and asked Envision to call him back to make arrangements. (Doc. No. 33, Att. 3.) Envision's first call on April 20 did not make contact with plaintiff, but during the second call plaintiff complained about Envision harassing him. (Doc. No. 33, Att. 3.) The third call, this one on April 21, again did not receive an answer. (Doc. No. 33, Att. 3.) The parties do not appear to dispute these facts. Similar to the eight day delay, these four calls do not indicate that the defendant's conduct was unfair or unconscionable. As such, defendant's motion to dismiss plaintiff's §1692f claim will be **GRANTED**.

### D.) Written Notice of Debt: 15 U.S.C. §1692g(a)

Section 1692g(a) of the FDCPA provides "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice." 15 U.S.C. §1692g(a). Here, defendant claims that its initial communication with plaintiff was on April 8, 2011 and points to the deposition testimony of Tarnisha Baines as proof. (Doc. No. 20, at 23.) Plaintiff disputes this fact and argues that defendant's initial contact with plaintiff occurred no later than February 9, 2011. (Doc. No. 33, at 25.) Because the date of first communication is essential to a 1692g claim and the parties dispute that date, there is a genuine dispute of material fact such that the court cannot grant defendant judgment as a matter of law. As such, defendants motion for summary judgment on the 1692g(a) claim will be **DENIED**.

### E.) Verification of Debt: 15 U.S.C. §1692g(b)

Section 1692g(b) of the FDCPA provides that a debt collector must obtain and mail a copy of the name and address of the original creditor and a verification of the debt or copy of the judgment if the debtor requests the

information.[5] [15 U.S.C. §1692g(b)](). If a debtor makes such a request, the debt collector must cease collection activity on the account until it responds accordingly. [15 U.S.C. §1692g(b)](). Plaintiff claims that Envision continued its collection activity on his account even after he twice asked for verification of the debt. (Doc. No. [33](), at 26; Doc. No. [1](), at 7.) Defendant moves for summary judgment of this claim, arguing that plaintiff never requested verification of the debt or the name of the original creditor but, instead, merely asked for an accounting of his remaining liability. (Doc. No. [20](), at 24.)

On April 29, 2011, plaintiff sent Envision's customer service department an email saying, "this is my second request for an itemized invoice of all returned checks and peneltaies [sic] and the payments I have made!" (Doc. No. [1](), Att. 7.) Although this email references another, similar request, the only evidence of the first request is plaintiff's deposition testimony, in which he stated, "I believe that I made that request over the phone. But it's very possible that when I sent them a check, with the portion that I sent back – the portion of the letter that I got, it says, send back with your payment. I may have written on that." (Doc. No. [33](), Att. 4.) This statement raises the possibility that plaintiff made informational requests on other occasions, both verbal and written.

Even if plaintiff did make these requests, he may not recover under

---

[5]The request must be made within a statutorily prescribed 30-day period as defined under [15 U.S.C. §1692g(a).]()

§1692g(b). As for the alleged verbal request mentioned in the deposition, §1692g(b) only provides relief for written requests, so plaintiff may not use that request as a basis for liability under §1692g(b). 15 U.S.C. §1692g(b). Furthermore, neither of plaintiff's written requests bring him within the confines of §1692g(b) because those requests did not ask for information about the original creditor or dispute the amount of the debt; rather, plaintiff simply asked for an "itemized invoice." (Doc. No. 33, at 26; Doc. No. 33, Att. 4.) It would be unreasonable for Envision to construe this request as a dispute over the debt, much less a request for information about a creditor. After a thorough review of the record, the court has determined that there is no dispute of material fact as to the 1692g(b) claim and that defendant is entitled to judgment as a matter of law. As such defendant's motion for summary judgment concerning the 1692g(b) claim will be **GRANTED**.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: August 1, 2013**

O:\Mannion\shared\MEMORANDA - DJ\2011 MEMORANDA\11-1598-01.wpd

30